UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH THRASH, ET AL., <br> Plaintiffs, <br> v. <br> CIRRUS ENTERPRISES, LLC, et al., <br> Defendants. | Case No. 17-cv-01501-JST <br><br> **ORDER DENYING MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION** <br><br> Re: ECF No. 26 |

Before the Court is Plaintiffs' Motion to Remand for Lack of Subject Matter Jurisdiction. ECF No. 26. The Court will deny the motion.

**I.  BACKGROUND**

Plaintiff Joseph Thrash alleges he was diagnosed with mesothelioma in September 2016, and was exposed to asbestos while he worked on B-52, C-141, and C-5 airplanes in the United States Air Force from 1975 through the 1980's and while doing automotive work at various locations. ECF No. 1-1 at 5, 7.

Plaintiffs allege that "Defendants placed their names, logos, and trademarks on asbestos products as well as put out as their own asbestos products manufactured by others so as to be an apparent manufacturer and liable as the manufacturer." ECF No. 1-1 at 5. Thrash "handled or was otherwise exposed to asbestos, asbestos containing products and/or products designed to be used in association with asbestos products." ECF No. 1-1 at 5. Plaintiffs allege that Defendants "specified and required the use of such original and replacement asbestos containing parts and components that were integral to their respective asbestos containing products' normal use and operation and that by design such normal use and operation directly created, generated, released and exposed [Plaintiffs] to asbestos-containing dust, debris, fiber and particulate" from those products and components, and that "as a direct and proximate result," he was exposed to the

asbestos, "which increased his risk of developing the mesothelioma and asbestos disease(s) from which he now suffers." ECF No. 1-1 at 7.

Plaintiffs originally filed this case in Alameda County Superior Court on February 21, 2017, bringing claims for negligence, breach of express and implied warranties, strict liability in tort, premises owner/contractor liability, and loss of consortium. ECF No. 1 at 2; ECF No. 1-1. On March 20, 2017, Defendant The Boeing Company ("Boeing") removed the case to federal court. ECF No. 1. Shortly thereafter, Defendants United Technology Corporation ("UTC"), Lockheed Martin Corporation ("Lockheed"), and The Goodyear Tire & Rubber Company ("Goodyear") filed notices of joinder in Boeing's removal notice. ECF Nos. 13, 16, 17. On April 4, 2017, Plaintiff filed a Motion to Remand for Lack of Subject Matter Jurisdiction, which the Court now considers. ECF No. 26.

## II. LEGAL STANDARD

A defendant may remove a civil action filed in state court to federal court so long as the district court could have exercised original jurisdiction over the matter. 28 U.S.C. § 1441(a). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). Generally, the removal statute is strictly construed against removal and any doubt as to the right of removal should be resolved in favor of remand. Id. at 566.

However, the opposite is true where, as here, defendants seek removal under the federal officer removal statute, 28 U.S.C. § 1442(a). See Leite v. Crane Co., 749 F.3d 1117, 1122 (9th Cir. 2014) ("We recognize that defendants enjoy much broader removal rights under the federal officer removal statute than they do under the general removal statute[.]"); Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1252 (9th Cir. 2006) (noting that, because it is important to the federal government to protect federal officers, removal rights under 28 U.S.C. section 1442 are much broader than those under section 1441). Under Section 1442 "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office" may remove the case to federal court. The Ninth Circuit has recognized "a clear command

2

from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, [courts] are to interpret section 1442 broadly in favor of removal." Id. The reason for this is important and pragmatic: "If the federal government can't guarantee its agents access to a federal forum if they are sued or prosecuted, it may have difficulty finding anyone willing to act on its behalf." Id.

"[A] defendant seeking to remove an action may not offer mere legal conclusions; it must allege the underlying facts supporting each of the requirements for removal jurisdiction." Leite, 749 F.3d at 1122. A motion to remand challenging the existence of removal jurisdiction is the "functional equivalent of a defendant's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)," and, like such motions, "may raise either a facial attack or a factual attack on the defendant's jurisdictional allegations . . . ." Id. A facial attack on subject-matter jurisdiction asserts that the jurisdictional allegations, even if true, "are insufficient on their face to invoke federal jurisdiction." Id. at 1121 (quoting Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the [defendant's jurisdictional] allegations as true and drawing all reasonable inferences in the [removing defendant's] favor . . . ." Id. at 1121. "A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." Id. A party responding to a factual attack must support its jurisdictional allegations with "competent proof," with the evidence evaluated "under the same evidentiary standard that governs in the summary judgment context." Id. However, to defeat a motion for remand, a federal officer "doesn't have to prove that its government contractor defense is in fact meritorious"—it only needs to show that the defense is "colorable." Leite, 749 F.3d at 1124.

### III. DISCUSSION

The Court first addresses the proper standard to apply, which turns on whether Plaintiffs have mounted a facial or factual challenge to Defendants' jurisdictional allegations. Plaintiffs in their motion cite the standard for a "factual attack" on removal jurisdiction. See ECF No. 26 at 9. The motion focuses on what Plaintiffs believe to be a lack of evidentiary support in Defendants'

removal notices.[1] See e.g., ECF No. 26 at 6 ("As shown below, Defendants have not produced any evidence to support either basis for federal question jurisdiction."), 7 ("The lack of evidentiary support cited in Defendants' Notice of Removal and Joinders shows that removal was improper."). Though Plaintiffs do not submit evidence outside the pleadings in support of their Motion to Remand, as would typically be required for a factual attack, they do generally "contest the truth of [Defendants'] factual allegations." Leite, 749 F.3d at 1122. Since Defendants have submitted evidence supporting removal jurisdiction in response to Plaintiffs' jurisdictional challenge, the Court need not limit its review to the pleadings, and will interpret Plaintiffs' motion as a factual attack on removal jurisdiction.

A defendant seeking removal under Section 1442 must establish (a) that it is a "person" within the meaning of the statute; (b) that there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) that it can assert a "colorable federal defense." Durham, 445 F.3d at 1251. Plaintiffs concede that Defendants are "persons" under Section 1442. ECF No. 26 at 9. However, Plaintiffs contend that Defendants have not sufficiently alleged facts to establish the other two requirements for federal officer removal jurisdiction, namely (i) that the acts complained of in Plaintiffs' complaint were taken at the direction of a federal officer and there is a causal nexus between the actions taken by Defendants and Plaintiffs' claims; and (ii) that Defendants can assert a colorable federal defense. 28 U.S.C. § 1442(a). The Court addresses each of these requirements in turn.

**A.     Acting Under the Direction of a Federal Officer and Causal Nexus**

To establish that they were acting under the direction of a federal officer, Defendants must show that a federal officer had "direct and detailed control" over them. Fung v. Abex Corp., 816

---

[1] Plaintiffs argue that Defendants must attach evidence to their notice of removal to establish a "colorable" defense. ECF No. 26 at 8 ("These facts, however, must be supported by evidence.") (emphasis in original). However, none of the cases they cite address the pleading requirements for a notice of removal. In view of Ninth Circuit law analogizing challenges to removal jurisdiction to Rule 12 motions, the Court agrees with Defendants that the notices need not attach evidence so long as they allege facts sufficient to render the jurisdictional allegations plausible. See Leite, 749 F.3d at 1123 (challenges to removal jurisdiction evaluated according to same standard as Rule 12 motions); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (complaint must allege "only enough facts to state a claim to relief that is plausible on its face").

4

F.Supp. 569, 572 (N.D. Cal. 1992).

Defendant Boeing alleges that "[i]n designing, manufacturing, supplying, testing, and repairing aircraft for the United States military, Boeing acted as a government contractor under the detailed and ongoing direction and control of one or more federal officers." ECF No. 1 at 4. It further alleges that as part of its contracts with the United States government, the government maintained "exclusive control over the design and development of the aircraft and required adherence to detailed specifications approved by the government." Id. Defendants UTC, Lockheed, and Goodyear make substantially similar allegations. ECF No. 13 at 3; ECF No. 16 at 4; ECF No. 17 at 6.

Boeing relies on the affidavit of Nolan H. Leatherman, who has "over 30 years of experience reviewing, negotiating and dealing with government contracts for military aircraft procurement . . . ." ECF No. 37-2 ("Leatherman Decl.") at ¶ 8. Mr. Leatherman, upon review of the relevant Boeing government contracts, states that Boeing was required to comply with detailed military specifications, including "material, item and installation specifications and standards pertaining to each and every part and component to be used in and/or procured for the aircraft." Id. at ¶ 15. Defendants UTC, Lockheed, and Goodyear each provide affidavits from similarly qualified witnesses detailing the exacting specifications each defendant had to follow in designing and manufacturing components for military aircraft. ECF No. 32-2 ("Sumner Decl.") at ¶ 7 (describing "oversight and approval process . . . through contract documents, design and construction drawings, written specifications, and personal oversight of Pratt & Whitney's work by military engineers, military inspectors, and military specialists who were resident on-site at Pratt & Whitney"); ECF No. 33-3 ("McCaffery Decl.") at ¶ 2 ("In the case of military aircraft, aircraft engines and aircraft components such as wheel/brake assemblies and consumable materials such as gaskets and hoses, the Armed Forces provided extensive and detailed specifications which provided the design requirements, operating characteristics, performance requirements, detailed configuration definitions, construction standards, materials, mandatory qualification and acceptance testing procedures, and documentation requirements."); ECF No. 35-1 ("Jimenez Decl.") at ¶ 11 ("Each Military aircraft procurement contract and all Military-

5

mandated specifications for the manufacture of Military aircraft are both fully inclusive and fully exclusive. This means that, unless the Government approves otherwise, Lockheed Martin is, and always was, required to do everything called for in the contract and Military-mandated specifications and is, and always was prohibited from doing anything not contained within the contract and Military-mandated specifications.").

In view of the uncontroverted evidence provided by Defendants, the Court finds that Defendants have established that the United States military exerted direct and detailed control over their work as it relates to Plaintiffs' allegations. See e.g. Brantley v. Borg-Warner Morse Tec, Inc., No. 12-cv-540, 2012 WL 1571129, *4 (S.D. Cal. May 3, 2012) (crediting expert declarations describing detailed specifications and inability of defendants to deviate from those specifications, finding that "[t]o demand more evidence than these declarations would 'frustrate the purpose of section 1442(a)(1).'") (quoting Ballenger v. AGCO Corp., No. C 06-2271, 2007 WL 1813821 at *3 (C.D. Cal. June 22, 2007); Fung, 816 F.Supp. at 572-73 (detailed specifications and contractual provisions for testing and monitoring established direct and detailed control).

Because Plaintiffs contend that Mr. Thrash was exposed to asbestos through the use of asbestos-containing products and/or components designed or manufactured by Defendants, and because Defendants have established that the United States government exerted direct and detailed control over their design and manufacture of these products, the Court further finds that Defendants have established a causal nexus between Plaintiffs' claims and the acts performed by Defendants under the direction of the United States government. Leite, 749 F.3d at 1124 ("In assessing whether a causal nexus exists, we credit the defendant's theory of the case. . . . Such a nexus exists here because the very act that forms the basis of plaintiffs' claims . . . is an act that [the contractor] contends it performed under the direction of the [Government] . . . .").

**B.** **Colorable Defense**

Plaintiffs next contend that Defendants have not established a colorable government contractor defense under Section 1442(a). To successfully assert a government contractor defense, Defendants must show: "(1) the United States approved reasonably precise specifications; (2) the equipment [Defendants supplied] conformed to those specifications; and (3) [Defendants] warned

6

the United States about the dangers in the use of the equipment that were known to the [Defendants] but not to the United States." Boyle, 487 U.S. at 512. The Court finds that Defendants have alleged sufficient facts, supported by affidavits and documentary evidence, to establish a colorable government contractor defense under Boyle.

With respect to the first prong of the Boyle test, Defendant Boeing alleges, in somewhat conclusory fashion, that it "designed, manufactured, and supplied the aircraft at issue, as well as markings and manuals to accompany them, in accordance with 'reasonably precise specifications' promulgated or adopted by the United States government" and that the equipment it provided conformed to those specifications. ECF No. 1 at 5. Defendants Lockheed, Goodyear, and UTC make similarly high-level allegations. ECF No. 13 at 3; ECF No. 16 at 4-6; ECF No. 17 at 8. However, Defendants have submitted ample evidence of the detailed specifications and contractual requirements they were subject to in designing and manufacturing the aircraft and components thereof that Thrash alleges contained asbestos and caused his exposure.[2] See, e.g., Leatherman Decl. at ¶¶ 15, 35-36; Jimenez Decl. at ¶¶ 11-15; McCaffery Decl. at ¶ 2; Sumner Decl. at ¶¶ 7-8. Plaintiffs contend that the evidence submitted by Defendants "amounts to nothing more than a claim that the government imposed exacting performance standards and required Defendants to meet them." ECF No. 46 at 4. The Court disagrees. For example, Defendant Boeing submitted evidence that the government-approved specifications for the B-52 aircraft required it to use components separately procured by the Air Force and Navy, and that Boeing had no ability to purchase or manufacture these components on its own or to add or modify warnings on these components. Leatherman Decl. ¶ 21. The other removing Defendants provide similar evidence of contractual requirements that specify certain components, not just performance standards. See e.g. McCaffery Decl. ¶ 3; Sumner Decl. ¶¶ 8-9; Jimenez Decl. ¶ 14. The Court

---

[2] Plaintiffs, citing Willis v. Buffalo Pumps Inc., 34 F.Supp.3d 1117, 1125 (S.D. Cal. 2014), contend that Defendants do not meet the first element of the government contractor defense because they do not identify particular specifications requiring the use of parts containing asbestos. ECF No. 26 at 13-14. But the Willis court was considering a manufacturer's summary judgment motion. To survive a motion to remand and establish removal jurisdiction, Defendants need only establish a colorable defense to Plaintiffs' claims. They need not prove their defense at this stage in the case. Leite, 749 F.3d at 1124.

therefore finds that Defendants have at this stage provided sufficient evidence that the United States military established reasonably precise specifications for their equipment under the first prong of the Boyle test.

With respect to the second prong of the Boyle test, since Defendants have provided evidence that they supplied aircraft and equipment to the United States military subject to reasonably precise specifications, the Court finds that Defendants have sufficiently established at this point that the equipment conformed to government specifications. See Miller v. Diamond Shamrock Co., 275 F.3d 414, 420 (5th Cir. 2001) (The government's "[a]cceptance and use of an item following its production can establish that the item conformed to its specifications.").

With respect to the third prong of the Boyle test, Defendants submit evidence that the United States military directly controlled the technical manuals and warning labels on the equipment at issue, and that Defendants could not have provided a warning without the military's prior approval. See e.g., Leatherman Decl. at ¶ 52 ("The Military controlled the markings and warnings that could be placed on B-52 aircraft."); Sumner Decl. at ¶ 13 ("Any written materials, such as warnings or product manuals, that accompanied the engines built by Pratt & Whitney for the U.S. Air Force were similarly controlled and approved by U.S. military representatives. . . . The U.S. military reviewed and considered what warnings should be provided with the aircraft engines."); Jimenez Decl. at ¶ 18 ("The Government also controlled the inclusion (as well as the type, placement, and content) of any warnings regarding Military aircraft."); McCaffery Decl. at ¶ 3 ("Thus, any 'Note', 'Caution' or 'Warning' in any technical manual, book, parts breakdown or list was subject to specific approval by the Armed Forces based on their determination of the need for such a 'Note', 'Caution' or 'Warning.'"). Defendant UTC submits an affidavit from William P. Ringo, who purports to be knowledgeable regarding the "potential hazards associated with the use of asbestos-containing products," stating that "the United States government was aware of potential health hazards of working with or around asbestos-containing materials dating back to the 1930s," and that the government had "state of the art knowledge" regarding this risk. ECF No. 32-3 ("Ringo Decl.") at ¶¶ 9. Defendant Goodyear's expert Mr. McCaffery offers similar

testimony.[3]  McCaffery Decl. ¶¶ 5, 12.

Based on this evidence, the Court finds that Defendants have provided sufficient evidence at this stage to show that they did not have any information regarding the danger of asbestos exposure that the United States military did not already have.  See Getz v. Boeing Co., 654 F.3d 852, 866 (9th Cir. 2011) ("Boyle does not require government contractors to warn of dangers that were already known to the United States."); see also Blackman v. Asbestos Defendants (BHC), No. C-97-3066, 1997 WL 703773, at *3 (N.D. Cal. Nov. 3, 1997) ("Finally, although Thiokol's papers do not allege that they warned the USAF of asbestos hazards, Thiokol satisfies the third prong of the Boyle test.  Thiokol is not an asbestos manufacturer; rather, Thiokol manufactures solid rocket motors for military missiles. Thiokol had no greater opportunity to know of the dangers of asbestos in the 1970's than did the USAF, and therefore, did not owe a duty to warn the USAF of the asbestos hazards.").  The Court therefore concludes that Defendants have adequately alleged and provided sufficient evidence at this stage in the case to assert at least a colorable government contractor defense.

Similarly, with respect to failure to warn claims, Defendants "will ultimately have to prove that (1) the [government] exercised its discretion and approved certain warnings for [their] products, (2) [Defendants] provided the warnings required by the [government], and (3) [Defendants] warned the [government] about any asbestos hazards that were known to [Defendants] but not to the [government]."  Leite, 749 F.3d at 1123.  As discussed above, Defendants have established that the United States military was directly involved in the preparation of technical manuals and warning labels, the military may have rejected any attempt by Defendants to include additional asbestos-related warnings, and that the military knew at least as much about the dangers of asbestos exposure as Defendants.  The Ninth Circuit has found this

---

[3] At least one other district court has found that the United States government had extensive knowledge regarding the dangers of asbestos exposure as early as the 1940's, decades before Plaintiff Thrash's alleged exposure to asbestos.  Niemann v. McDonnell Douglas Corp., 721 F. Supp. 1019, 1028 (S.D. Ill. 1989) (granting summary judgment on government contractor defense, finding "at the time of the construction of these aircraft [as early as 1946], the government was aware of the risks of the use of asbestos, and chose to continue to use asbestos in spite of this knowledge.").

9

showing sufficient to establish a colorable government contractor defense to a failure to warn claim. Leite, 749 F.3d at 1123-24. In Leite, the defendant Crane, like Defendants here, submitted expert affidavits tending to show that the United States Navy mandated warnings on equipment provided by manufacturers, that the Navy might have rejected any additional warnings proposed by the manufacturers, and that the Navy at all times knew at least as much about asbestos hazards as the manufacturers. Id. There, as here, the plaintiffs contended that "counterfactual opinion testimony" that the government would not have allowed additional asbestos warnings, in the absence of actual evidence that the defendants proposed such warnings, could not support a colorable government contractor defense to a failure to warn claim. Id. at 1123. The Ninth Circuit found that this was an evidentiary objection that need not be resolved, as "[i]t's enough . . . that the Navy exercised its discretion by prescribing certain warnings and prohibiting others without its express approval." Id. The evidence submitted by Defendants here is no different than that found to be sufficient by the Ninth Circuit in Leite. The Court therefore the Court finds that Defendants have established at least a colorable federal contractor defense with respect to Plaintiffs' failure to warn claim.

Defendants Boeing, Lockheed, and Goodyear each additionally assert the defense of derivative sovereign immunity. Since the Court has found that Defendants have each raised a colorable federal contractor defense, the Court need not address the parties' arguments regarding the derivative sovereign immunity defense.[4]

/ / /

/ / /

/ / /

---

[4] Under this defense, a party acting on behalf of the United States government pursuant to a contract is immune from liability so long as that party has not exceeded its authority under the contract and the contract was validly conferred. See Yearsley v. W.A. Ross Const. Co., 309 U.S. 18, 21 (1940). Plaintiffs contend that Defendants have not established a colorable derivative sovereign immunity defense for the same reason that they have failed to establish a colorable government contractor defense—namely, that Defendants purportedly did not provide evidence that "the particular actions they undertook which caused Thrash's harm were taken pursuant to a federal officer's direction . . . ." ECF No. 26 at 16. Since neither Plaintiffs nor the defendants asserting the defense have provided much more than a cursory discussion of this defense in their papers, the Court declines to substantively address it here.

**CONCLUSION**

Plaintiff's Motion to Remand is denied.

IT IS SO ORDERED.

Dated: June 20, 2017

_____
JON S. TIGAR
United States District Judge